Filed 6/30/25  P. v. Hoover CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099187 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F02341) |
| v. | |
| BRADLEY HOOVER, | |
| Defendant and Appellant. | |

This appeal arises from the trial court's denial of defendant Bradley Hoover's Penal Code section 1172.6 petition.[1]  He contends the court erred because there was no substantial evidence he was the actual killer.  He also argues that, given a change in his sentence that occurred in a parallel proceeding, he is now entitled to presentence conduct

---

[1] Undesignated statutory references are to the Penal Code.

1

credits.  We reject Hoover's substantial evidence challenge and will remand for the trial court to consider whether Hoover is entitled to presentence conduct credits.

**FACTUAL BACKGROUND**

In 2011, a jury found Hoover guilty of first degree murder (§ 187, subd. (a)) and kidnapping (§ 207, subd. (a)) and found true the special circumstance that Hoover committed the murder while engaged in the crime of kidnapping (§ 190.2, subd. (a)(17)). The jury did not reach a decision on allegations that Hoover personally used a firearm (former § 12022.5, subd. (a)(1)) when committing each offense.  The trial court sentenced Hoover to life without the possibility of parole for the murder and the middle term of five years for the kidnapping but stayed the kidnapping sentence under section 654.  We affirmed the judgment on appeal.  (*People v. Hoover* (July 29, 2013, C069060) [nonpub. opn.].)

In 2021, Hoover petitioned for resentencing pursuant to what is now section 1172.6 (former § 1170.95), arguing he could no longer be convicted of first degree murder given the legislative changes to murder liability.  The trial court issued an order to show cause and set an evidentiary hearing.

*Trial Evidence*

Prior to the evidentiary hearing, the People submitted the reporter's transcript and exhibits from Hoover's original trial.  The following evidence was introduced at trial.

On August 8, 1994, officers were dispatched to a location near Highway 12, where they found the victim.  Police identified two crime scenes approximately 200 to 250 yards apart.  At the first crime scene, Detective Richard Lauther discovered blood stains and a spent nine-millimeter shell casing.  He observed a trail of blood and footprints consistent with the victim's style of shoe leading from the first crime scene to the second crime scene.  The victim was found at the second crime scene; a second nine-millimeter shell casing was found approximately five to 10 feet from the victim.  Both shell casings

2

were fired from the same firearm. Detective Lauther also observed fresh tire tracks indicating a car had turned around in the area.

An autopsy determined the victim's cause of death was multiple gunshot wounds to the head. The victim had been shot twice in the face—once when the gun was at least three to four feet away and the other when the gun was only inches away. Investigators did not publicly reveal that the victim was shot twice, once at two different locations.

The victim's nephew testified that, earlier in the day on August 8, 1994, he dropped the victim off at Terry W.'s sister's house. Terri H. was also at the house at the time.[2] Terri H. testified that after the victim arrived, Hoover and John W. showed up, and there was a loud meeting with the victim, Hoover, and John W. Terry W. asked the three of them to leave. The victim was tearing up as they were walking out, and the victim mouthed to Terry W., "please don't let—please don't let him take me. I don't want to go. Help me." The victim was told not to make a scene and to "act like it was a casual walk across the street." Terri H. believed she saw Hoover's wife outside the house at the time.[3]

Terri H. said to Hoover, "I don't know what's going on here, but is it as bad as what Don [R.] had did?" Hoover responded it was worse. Don R. was an individual who Hoover had beaten up previously. As part of the attack, Hoover held a gun to Don R.'s head. It took Don R. two to three weeks to walk out of the garage where the beating occurred.

---

[2] Terri H.'s first name appears as both "Terri" and "Teri" in the record. For consistency and clarity, we will spell it as "Terri" throughout this opinion.

[3] At the time of the murder, this individual was Hoover's girlfriend. They married prior to trial. For consistency and clarity, we will refer to her as Hoover's wife throughout.

In an interview, Terri H. told Detective Lauther information that an individual named Patricia B. had told her. Patricia B. had, in turn, learned this information from Hoover's wife. Terri H. told the detective that: (1) Hoover and his wife took the victim out to a field near Highway 12; (2) Hoover got out of the car and shot the victim once in the head before driving away; (3) Hoover turned the car around after seeing the victim get up and try to walk and crawl back to the road; and (4) Hoover got out of the car again, walked up to the victim, and shot the victim in the head again.

At trial, Terri H. testified that when she was staying at Patricia B.'s house, Patricia B. said Hoover's wife told her Hoover and his wife took the victim "to Yolo County out in the slough, something like that. They shot him. He was shot once in the head or something, and then they drove off and then had a funny feeling and turned around and came back and he had drug himself up into the street and they shot him again." The trial court overruled Hoover's double hearsay objection to this testimony.

Patricia B. testified that she never made any such statement to Terri H. and she never heard any such statement from Hoover's wife. She said Terri H. would visit her house but would not stay overnight.

Hoover's wife testified that she did not know anything about the victim's death. According to Hoover's wife, she and Hoover were having dinner with her parents on August 8, 1994, at 5:00 p.m. She denied ever having told Patricia B. otherwise.

*Section 1172.6 Evidentiary Hearing*

At the evidentiary hearing, a forensic media examiner testified he reviewed an original recording of an interview with Terri H. from 1994. This original recording was deficient in various respects that made portions of the recording unintelligible. The examiner reviewed a clarified recording of that interview. According to a transcript of the clarified recording, Detective Lauther said at one point, "Brad shot [the victim] once in his neck" and Terri H. responded affirmatively.

4

An attorney investigator testified that he interviewed Terri H. on two different occasions.  According to the investigator, in one interview Terri H. said she overheard Patricia B. and Hoover's wife discussing the crime.  But in the other interview, Terri H. said Patricia B. relayed to her what she had heard from Hoover's wife.

Terri H. took the stand again at the evidentiary hearing.  She testified that:  (1) she has some memory loss and was using drugs at the time of the victim's death; (2) it would not be correct to say the victim was shot in the neck as she believed he was shot in the head; (3) one of Patricia B.'s daughters was named Missy; and (4) she did not overhear a conversation between Patricia B. and Hoover's wife but, rather, was later told by Patricia B. what Hoover's wife said.

Patricia B. testified at the evidentiary hearing that her daughters were named Susan and Rebecca and she never told Terri H. that Hoover shot the victim in the neck.  She admitted that Terri H. stayed at her house for two or three days.

*Trial Court Ruling*

The trial court concluded that, beyond a reasonable doubt, Hoover was the actual killer and acted with express malice, premeditation, and deliberation.  Accordingly, Hoover would still be guilty of first degree murder and was not eligible for relief under section 1172.6.  In making its factual findings, the court explained that it found Terri H.'s testimony credible and did not find the testimony of Patricia B. or Hoover's wife credible.  The court acknowledged that portions of Terri H.'s testimony were not always consistent or "perfect."  But the court found it credible that Terri H. knew the victim died from two separate bullets and crawled to a different spot after being shot the first time, as this information was not publicly available.

As part of a habeas corpus proceeding that occurred in parallel with the section 1172.6 proceedings, the trial court struck the special circumstance finding due to instructional error at Hoover's original trial.  As such, after the court denied the section 1172.6 petition, the court resentenced Hoover to 25 years to life imprisonment.

5

Hoover timely appealed.

## DISCUSSION

*Substantial Evidence*

Hoover argues the evidence was insufficient to establish he was the actual killer. We disagree.

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which amended sections 188 and 189 to significantly limit the scope of the felony-murder rule and eliminate second degree murder liability predicated on the natural and probable consequences doctrine. (*People v. Lezama* (2024) 101 Cal.App.5th 583, 587; *People v. Strong* (2022) 13 Cal.5th 698, 707-708 & fn. 1; *People v. Curiel* (2023) 15 Cal.5th 433, 448-449.) Among other things, the enactment added section 189, subdivision (e), which specifies that a "participant in the perpetration or attempted perpetration of a [specified] felony . . . in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life."

Senate Bill 1437 also created "a special procedural mechanism for those convicted under the former law to seek retroactive relief," codified at what is now section 1172.6. (*People v. Strong, supra*, 13 Cal.5th at p. 708.) If the trial court finds that a petitioning defendant has made a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d); *People v. Curiel, supra*, 15 Cal.5th at p. 450.) At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to

6

Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

We review the denial of a section 1172.6 petition for substantial evidence. (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 125.) Under this standard, we examine " 'the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657-658.) "We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Pham* (2009) 180 Cal.App.4th 919, 924-925.) A single witness's testimony may constitute substantial evidence to support a finding. (*People v. Lucero* (2019) 41 Cal.App.5th 370, 411.)

Hoover's substantial evidence claim centers on Terri H.'s testimony. Hoover does not challenge the testimony's admissibility, and he readily acknowledges that the testimony of a single witness can provide sufficient evidence to support the trial court's finding. Nonetheless, Hoover contends that because Terri H.'s testimony is "facially incredible," it does not constitute substantial evidence. We are not persuaded.

Hoover first argues the testimony is not reliable because it rests on multiple levels of hearsay. While the out-of-court statements at issue may constitute hearsay, Hoover does not claim they were improperly admitted at the original trial or at the section 1172.6 evidentiary hearing. Hearsay that is admissible under an exception to the hearsay rule is not inherently unreliable, as Hoover suggests. (See *Boermeester v. Carry* (2024) 100 Cal.App.5th 383, 397 ["under the formal rules of evidence, there are many exceptions to the hearsay rule; those exceptions exist because some out-of-court statements are deemed reliable"].)

Hoover next argues the testimony is unreliable because it is based on the uncorroborated statement of an uncharged accomplice, Hoover's wife. It is true that,

7

under section 1111, "a defendant cannot be convicted of a crime based on the testimony of an accomplice unless that testimony is corroborated by independent evidence that connects the defendant with the commission of the crime." (*People v. Jasso* (2025) 17 Cal.5th 646, 684.) But it is not clear that section 1111 applies in a section 1172.6 proceeding. (See *People v. Hill* (2024) 100 Cal.App.5th 1055, 1067 ["courts have uniformly held the sentence modification procedure under section 1172.6 to constitute an act of legislative lenity, not a new criminal prosecution"].) And even if it did apply, Hoover has not presented sufficient argument establishing that Hoover's wife qualifies as an accomplice under section 1111. (See *People v. Mohamed* (2016) 247 Cal.App.4th 152, 161 [explaining that, under this statute, an accomplice is a person "subject to prosecution for the identical offense charged against the defendant by reason of being a direct perpetrator, aider and abettor, or coconspirator"].)

In any event, Hoover's wife's statements were corroborated by other evidence. " 'Corroborating evidence may be slight, entirely circumstantial, and entitled to little consideration when standing alone. [Citations.] It need not be sufficient to establish every element of the charged offense or to establish the precise facts to which the accomplice testified. [Citations.] It is "sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." ' " (*People v. Jasso, supra*, 17 Cal.5th at p. 685.) Here, after a loud "meeting,"—i.e., an argument—Hoover left the house with the victim. The victim did not want to go with Hoover and was in tears. Hoover's wife was seen outside the house as Hoover and the victim were leaving. The victim was found killed shortly thereafter. This evidence sufficiently corroborates Hoover's wife's statement that she went with Hoover and the victim to the site where Hoover killed the victim.

Finally, Hoover attempts to undermine Terri H.'s testimony by pointing out purported inconsistencies in her accounts; conflicts between her testimony and that of other witnesses; her past drug use; and her memory issues. For instance, Hoover

8

discusses how Terri H. believed Patricia B.'s daughter was named Missy even though Patricia B. claimed none of her children were so named. These points all relate to Terri H.'s credibility and the weight assigned to her testimony. They do not render the testimony an evidentiary nullity. As explained, under the substantial evidence standard of review, we do not reweigh the evidence or revisit credibility issues.

*Presentence Conduct Credits*

Hoover argues that, due to the change of his sentence from life without the possibility of parole to 25 years to life imprisonment, he is now entitled to presentence conduct credits. He explains that, when the murder in this case occurred: (1) section 190, subdivision (e) and section 2933.2 did not yet bar custody credits for those convicted of murder; and (2) section 2933.1 did not yet limit the accrual of conduct credits to 15 percent of worktime credit for those convicted of murder. For these reasons, Hoover claims he is now entitled to 198 days of presentence conduct credit.

Hoover did not raise this issue when the trial court reduced his sentence to 25 years to life. The People respond that Hoover "appears entitled" to these credits but they do not substantively address Hoover's arguments. In these circumstances, we will remand for the trial court to consider the argument that Hoover is entitled to 198 days of presentence conduct credits given the change of his sentence.

**DISPOSITION**

The postjudgment order denying Hoover's section 1172.6 petition is affirmed.  We remand to the trial court to consider whether Hoover is entitled to presentence conduct credits given the change in his sentence.

       /s/                  
EARL, P. J.

We concur:


     /s/              
RENNER, J.


     /s/              
FEINBERG, J.